IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARPENTERS COMBINED FUNDS, INC., by James R. Klein, Administrator, | ) ) ) |
| Plaintiff, | ) Civil Action No. 09-0842 ) ) |
| v. | ) Magistrate Judge Lisa Pupo Lenihan ) |
| LYONS CONTRACTING, INC. a/k/a LYONS CONTRACTING LLC, MARTIN A. LYONS, III, SUSAN M. LYONS and MARTIN A. LYONS, JR., | ) Doc. No. 8 ) ) ) ) |
| Defendants | ) ) |

## **OPINION**

LENIHAN, Magistrate Judge

Currently before the Court for disposition is a Motion to Dismiss (Doc. No. 8) filed by Defendants Lyons Contracting, Inc. a/k/a Lyons Contracting LLC, Martin A. Lyons, III, Susan M. Lyons, and Martin A. Lyons, Jr (collectively, "Defendants"). For the reasons set forth below, the Court will deny Defendants' Motion.

### *Background*

Plaintiff Carpenters Combined Funds, Inc. ("the Funds") is a Pennsylvania non-profit corporation that administers fringe benefits and acts as a collection agent for those funds for various employer associations and unions. Defendant Lyons Contracting, Inc. a/k/a Lyons Contracting, LLC ("Defendant Contractor") is engaged in the construction business and is a party to a labor agreement ("the Agreement") also executed by the Greater Pennsylvania Regional Council of Carpenters and its affiliated local unions. Defendants Martin A. Lyons, III, Susan M. Lyons, and Martin A. Lyons,

Jr. ("Individual Defendants") served as, respectively, the corporate secretary, principal shareholder and owner; the President; and the treasurer of Defendant Contractor.

On June 26, 2009, the Funds filed this suit through its Administrator James R. Klein, seeking payment of monies allegedly owed and equitable relief pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185. In particular, the Funds contends that Defendants failed to pay fringe benefit contributions and wage deductions to the Funds in violation of the collective bargaining agreement. The Funds also asserts that each of the Individual Defendants has breached his fiduciary duty under ERISA and has committed common law conversion.

Defendants filed the instant Motion to Dismiss ("Motion") on July 28, 2009, and a Brief in Support of Motion to Dismiss on August 31, 2009. Defendants contend that the Funds's Complaint fails to state a claim under Fed.R.Civ.P. 12(b)(6) as to the Individual Defendants and with regard to the request for injunctive relief. As to the Individual Defendants, Defendants assert that ERISA imposes no personal liability upon corporate officers and that the Funds's claim is preempted by the Labor Management Relations Act ("LMRA") and the National Labor Relations Act ("NLRA").

The Funds filed a Brief in Opposition to Motion to Dismiss ("Brief in Opposition") on September 16, 2009.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185(c) and 1132(e)(1). Venue in this District is proper under 29 U.S.C. §§ 185(a) and 1132(e)(2).

For the reasons set forth below, the Court finds that the Complaint avers sufficient facts in support of the claims against the Individual Defendants and for injunctive relief to survive a motion to dismiss. Therefore, Defendants' Motion will be **denied**.

### *Standard of Review*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (May 18, 2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 1949 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57).

Recently, the court of appeals expounded on this standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*.

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter"

3

to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal,* the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler* at 210-11. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, its attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint may also be weighed if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consult those documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

### *Factual History*

The relevant facts, viewed in the light most favorable to the Funds, are stated as follows. The Funds administers fringe benefit funds and acts as a collection agent on behalf of employer associations and unions. (Compl. ¶ 3.) Defendant Contractor is obligated, pursuant to the

Agreement, to submit monthly payments to the Funds for the benefit of its employees covered by the Agreement. (Compl. ¶ 6.)

Defendant Contractor has failed to make timely payments of funds for pension, medical, annuity/savings, apprenticeship, and dues, which has resulted in a principal deficiency of $67,212.80. (Compl. ¶ 7.) As of June 19, 2009, the Funds calculates interest and contractual/liquidated damages at $16,826.59. (*Id.*) From that time on, interest would accrue at the rate of $27.62 per day. (*Id.*)

## *Analysis*

Federal Rule of Civil Procedure 8(a) provides that a complaint shall contain:

(1)   a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it,
(2)   a short and plain statement of the claim showing that the pleader is entitled to relief, and
(3)   a demand for judgment for the relief the pleader seeks.

With regard to Rule 8(a)(2), a complaint must only "'give the defendant fair notice of what the...claim is and the grounds upon which it rests...'" *Twombly* at 554 (quoting *Conley* at 47).

With this precept in mind, the Court will address *seriatim* the claims that Defendants argue should be dismissed.

## **ERISA Breach of Fiduciary Duty Action Against Individual Defendants**

Defendants argue first that the Funds cannot sustain a breach of fiduciary duty action against the Individual Defendants. Their core argument is that the Individual Defendants do not qualify as "employers" under ERISA and thus cannot entertain personal liability. Defendants insist that a plaintiff must seek to pierce the corporate veil in order to hold corporate officers or shareholders personally liable for an ERISA claim.

The Funds responds that it seeks to hold the Individual Defendants personally liable not as "employers," but as fiduciaries who have breached their duties as imposed by ERISA.

Under ERISA, "Every **employer** who is obligated to make contributions to a multi-employer plan...shall...make such contributions in accordance with the terms and conditions" of the governing collective bargaining agreement. 29 U.S.C. § 1145 (emphasis added). The statute also states:

> Any person who is a **fiduciary** with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be **personally liable** to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added).

Each plan shall have at least one named fiduciary. 29 U.S.C. § 1102(a)(1). However, an individual may be deemed a fiduciary even if he is not specifically named by the governing agreement. 29 U.S.C. § 1002(21)(A).

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* Any fiduciary, whether named or unnamed, is obligated to administer a plan "solely in the interest of the participants and beneficiaries...." 29 U.S.C. § 1104(a)(1).

Accordingly, a corporate officer may be personally liable under ERISA if he was a fiduciary and he failed to act "solely in the interest of the plan participants and beneficiaries." *Laborers' Combined Funds of W. Pa. v. Parkins*, No. 01-CV-79, 2002 U.S. Dist. LEXIS 20035, *5-6 (W.D.

Pa. June 5, 2002); *See also Galgay v. Gangloff*, 677 F. Supp. 295, 301 (M.D. Pa. 1987), *aff'd*, 932 F.2d 959 (3d Cir. 1991). Ultimately, based upon the wording of the statute, whether an officer qualifies as a "fiduciary" turns on whether the monies at issue constituted "plan assets" and whether the officer exercised control over them. *Parkins* at *6.

To determine whether the Individual Defendants were fiduciaries, we must first consider whether the amounts at issue qualify as plan assets. The Funds alleges in its Complaint that Defendant Contractor "failed to make timely payments of principal contributions and wage deductions to the Funds, which has resulted in a principal deficiency of $67,212.80." (Compl. ¶ 7.) Citing case law, the Funds argues in its Brief in Opposition that these unpaid fringe benefits constitute plan assets, by virtue of certain "due and owing" language in the Agreement. Apparently, with such language appearing in a trust agreement, outstanding contributions are vested in the plan automatically, as opposed to upon their payment. *Galgay* at 301.

Whether particular contributions and payments qualify as plan assets must be determined by the parties' intent as expressed in the operative agreement. *SEIU, Dist. 1199P v. Monsour Med. Ctr., Inc.*, 555 F. Supp. 2d 566, 569 (W.D. Pa. 2008). "Due and owing" language can indicate the immediate vesting of funds, making them assets of the plan. *Galgay* at 301.

As recited above, in ruling on a motion to dismiss, a court may look only to the face of the complaint, any attached exhibits, and matters of public record. *Pension Benefit Guar.* at 1196. Further, it may look to any documents "described or identified in the complaint...." *Id.* Although relied upon and quoted, the parties' Agreement was attached to neither the Complaint nor the Motion nor the Funds' Brief in Opposition. What is attached to the Funds's Brief in Opposition is an Affidavit signed by its Administrator and "a true and correct copy of the relevant portion of one of

[The Funds's] trust agreement evidencing the relevant language contained in all the trust agreements...." That language itself acknowledges that the attachment is not a true and correct recreation of the Agreement. It is merely an excerpt of a representative, comparable agreement.

Therefore, at this time, this Court is unable to resolve the parties' intent as it relates to the unpaid amounts at issue. While the Agreement did not accompany the Complaint as an exhibit, it was referred to and relied upon therein and could have been considered if attached with a later filing. Without the necessary information, the Court cannot determine whether the Funds's claim should be dismissed. On the face of its Complaint the Funds does present a plausible basis for relief. Therefore, Defendants' Motion as to this issue must be dismissed, since the Court cannot at this time resolve whether the unpaid amounts constitute plan assets. *See SEIU* at 569-70.

**State Common Law Conversion Action Against Individual Defendants**

Count III of the Funds's Complaint alleges that the Individual Defendants failed to pay amounts due under the Agreement to the Funds, and instead intentionally converted that money for their own use. Defendants respond first that the LMRA and NLRA "do not impose personal liability on a shareholder or corporate officer for claims arising under a collective bargaining agreement but not paid by the corporation." (Mo. to Dismiss ¶ 3.) Defendants then claim again that the Funds must seek to pierce the corporate veil in order to hold the Individual Defendants personally liable for amounts due.

The Funds counters that Defendants have again misinterpreted its allegations, noting that it does not wish to hold the Individual Defendants liable as "employers" under the LMRA but as individuals for conversion for wrongful retention of the deductions not paid to the Funds. The Funds asserts that a corporate officer who takes part in the corporation's commission of a tort is personally

liable for that tort. The Funds alleges specifically that the Individual Defendants, who exercised control over the wage deductions, participated in the tort of conversion by not paying them to the Funds.

Conversion is "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 435 Pa. 57, 60 (1969). There can be conversion of money only where the defendant had an obligation to deliver the money to the plaintiff and did not, or where the money was wrongfully received and retained by the defendant. *Sterrett v. Royal Indem. Co.*, 26 Pa. D. & C. 254, 258 (C.P. Phila. 1936) (citing *Borland v. Stokes*, 120 Pa. 278 (1888)).

One way in which corporate officers may be held personally liable is where the plaintiff has successfully pierced the corporate veil. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621 (1983). In those instances, the corporation is not a bona fide entity and so its acts are those of the owner. *Id.* Alternatively, corporate officers may be held personally liable under the participation theory. *Id.* On that basis,

> the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Id.* (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)). Consequently, corporate officers may be held personally liable for misfeasance, though not for nonfeasance. *Id.* at 622 (citing *Chester-Cambridge B. & T. v. Rhodes*, 346 Pa. 427, 432 (1943).

The Funds's Complaint does aver that the Individual Defendants participated in allegedly tortious behavior of Defendant Contractor. It does not assert that Defendant Contractor is not a bona

9

fide entity, in which case the proper avenue would be for the Funds to seek to pierce the corporate veil. The Funds contends that the Individual Defendants willfully interfered with the transfer of employee funds to the Funds and that the Individual Defendants had an affirmative duty to make that transfer.

As to this argument, Defendants' Motion will be denied. When the Court accepts all well-pleaded facts as true and disregards any legal conclusions contained in the Complaint, the Funds presents a plausible claim for relief. Using the participation theory, the Funds alleges sufficient facts to indicate that it may have a valid claim against the Individual Defendants for the acts of Defendant Contractor.

Also as to this count, Defendants argue that the Funds has failed to state a cause of action because the LMRA and NLRA preempt the state law claim.

The Funds responds that the LMRA preempts state law only if application of the law requires the court to interpret or analyze the parties' collective bargaining agreement. The Funds proceeds with the argument that because the Agreement clearly defines the duty of Defendant Contractor to make wage deductions, there is no need for the Court to interpret that Agreement here, and thus no preemption.

Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). That section has been interpreted to grant federal courts the authority to create a body of federal law as it relates to collective bargaining agreements. *Lingle v. Norge Div. of Magic*

*Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957)). In a question of LMRA preemption, the Supreme Court stated in *Lingle*:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles -- necessarily uniform throughout the Nation -- must be employed to resolve the dispute.

*Id.* at 405-06. This principal of preemption arose initially in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962), with the purpose of ensuring that federal law remains the basis for interpretation of collective bargaining agreements. *Lingle* at 409.

> In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 409-10.

First, the LMRA expressly applies to "[s]uits for violation of contracts between an employer and a labor organization...." In this instance, the Funds maintains that the Individual Defendants were not parties to the Agreement and that, therefore, this conversion action is not an action on the contract. Because the LMRA would not apply, it could not preempt state law.

Again, because the Court has not been provided the parties' Agreement, it cannot fully resolve this issue presently. Without review of that document, it cannot be said whether its interpretation or analysis would be required for determination of this issue. Therefore, Defendant's Motion will be dismissed since, based upon the information before the Court, the Funds have presented a plausible claim for relief. It appears likely that either the LMRA would not apply or federal law would not be required to interpret the Agreement.

**ERISA Claim for Equitable Relief**

Finally, Defendants aver that the Funds's request for equitable relief in the form of an injunction is inappropriate since it has an adequate remedy at law. In making that argument, it relies upon *Simpler Consulting, Inc. v. Wall*, No. 05-452, 2008 U.S. Dist. LEXIS 22578 (W.D. Pa. 2008).

The Funds contends that *Simpler Consulting* is inapplicable here and that ERISA does, in fact, provide for injunctive relief.

First, the Court will quickly deal with Defendants' reliance on *Simpler Consulting*, which is not instructive in this instance. *Simpler Consulting* did not involve an ERISA claim, but rather "copyright infringement, breach of contract, civil conspiracy, conversion, unjust enrichment, and violation of the Lanham Act." *Simpler Consulting* at *3. There, because the plaintiff could not establish its entitlement to equitable remedies, they were denied. *Id.* at *17.

In this instance, equitable relief is provided for by statute. ERISA authorizes both monetary and injunctive relief for violations of Section 1145, which is quoted above. In particular, Section 1132 provides in relevant part:

> (a) A civil action may be brought–
>   (1) by a participant or beneficiary–
>       . . .
>
>       (B) to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>   . . .
>
>       (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violated any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. §§ 1132(a)(1) and (3). Section 1132 further provides that, in actions "involving delinquent contributions," the court may award, as well as monetary damages and reasonable costs and attorney's fees, "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

ERISA does not provide specific procedures governing the issuance of injunctive relief, so the court must determine the right to injunctive relief under traditional standards. *Gould v. Lambert Excavating, Inc.*, 810 F.2d 1214, 1217 (7th Cir. 1989) (citations omitted). Accordingly, the court must determine whether the complaint on its face alleges irreparable harm and an inadequate remedy at law, which together would constitute a plaintiff's entitlement to equitable relief. *Chlystek v. Kane*, 540 F.2d 171, 174 (3d Cir. 1976). The complaint need not set forth specific allegations of irreparable harm and inadequate remedy at law if the totality of its allegations demonstrate that irreparable harm and inadequate remedy at law result from the acts alleged. *Id.* (citations omitted). Thus, the court is duty-bound to examine the complaint for substantive allegations that would support a claim for injunctive relief, and not to rely solely upon the prayer for relief. *Id.* (citing *Majuri v. United States*, 431 F.2d 469 (3d Cir. 1970)).

In this case, the Funds has alleged facts to support a claim for injunctive relief. The Complaint alleges that there has been a lapse in payments, which, in this circuit, has been recognized as an irreparable injury. *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979); *Shultz v. Teledyne, Inc.*, 657 F.Supp. 289, 293 (W.D. Pa. 1987)); *Combs v. Hawk Contracting, Inc.*, 543 F.Supp. 825, 829-30 (W.D. Pa. 1982) (holding that a lapse in payments alone represents a significant harm). Given the Funds's allegations, the Complaint taken as a whole

13

alleges irreparable harm and inadequate remedy at law, which is a sufficient basis for equitable relief. Therefore, Defendants' Motion will be dismissed as to the Funds's claim for injunctive relief.

## *Conclusion*

For the reasons set forth above, Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will be denied. An appropriate Order will follow.

Dated: November 18, 2009

By the Court:

LISA PUPO LENIHAN
U.S. MAGISTRATE JUDGE

cc:   Counsel of Record